IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE GLADDEN o/b/o | : | CIVIL ACTION |
| DELSIA B. HYMAN-SELF (Deceased), | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 17-1832 |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Terrance Gladden ("Gladden" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying the claim of his deceased mother, Delsia B. Hyman-Self ("Hyman-Self"), for disability insurance benefits ("DIB"). For the reasons that follow, Gladden's Request for Review is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Hyman-Self was born on July 23, 1952. R. at 57.[1] She had an 11th-grade education. Id. at 189. Her past relevant work experience was as a hand packager and as a cashier checker. Id. at 43, 190. Hyman-Self filed her application for DIB on July 11, 2013, id. at 34, asserting that she became disabled on November 1, 2011 due to having had two toes amputated from her left foot, numbness in both legs, right knee pain and high blood pressure, id. at 188. Her application was initially denied on September 16, 2013. Id. at 83-87. At Hyman-Self's request, an Administrative Law Judge ("ALJ") held a hearing regarding the denial of her application on May

---

[1]   Citations to the record will be indicated by "R." followed by the page number.

26, 2015.  Id. at 49-82.  The ALJ denied Hyman-Self's application in a decision issued on September 22, 2015.  Id. at 34-44.  Hyman-Self filed a timely appeal with the Appeals Council, which denied her request for review on February 24, 2017, thereby affirming the ALJ's decision as the final decision of the Commissioner.  Id. at 1-5.  Hyman-Self passed away on August 23, 2016.  Id. at 20.  Her son, Gladden, commenced this action in federal court on her behalf.

## II. STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The court's review is

2

plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920 (references to other regulations omitted); accord id. § 404.1520.

### III. THE ALJ'S DECISION

In her decision, the ALJ found that Hyman-Self suffered from the severe impairments of right knee osteoarthritis and peripheral vascular (arterial) disease. R. at 36. The ALJ concluded, however, that none of Hyman-Self's impairments, nor the combination of her impairments, met or medically equaled a listed impairment. Id. at 37. The ALJ found that Hyman-Self had the residual functional capacity ("RFC") to perform: "light work as defined in 20 CFR 404.1567(b)

3

except she can occasionally use foot controls bilaterally. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl." Id. at 38. Relying upon the testimony of the vocational expert ("VE") who appeared at the hearing, the ALJ determined that Hyman-Self was capable of performing her past relevant work as a hand packager and cashier checker. Id. at 43. Therefore, the ALJ concluded that Hyman-Self was not disabled. Id.

## IV.     THE REQUEST FOR REVIEW

In his Request for Review, Gladden asserts that the ALJ erred in failing to fully adopt the opinion of a State-appointed consultative examiner, Dr. Hua Yang, M.D., the only medical opinion in the record, and in judging Hyman-Self's testimony as only partially credible. As discussed below, this contention is plainly meritless.

## V.     DISCUSSION

### A.     The ALJ Did Not Err in Declining to Fully Adopt the Physical Limitations Stated in Dr. Yang's Opinion

#### 1.     Hyman-Self's Medical Records

Hyman-Self's medical records are somewhat limited because she had been without medical insurance for some time and sought treatment only sporadically. See id. at 41. She was laid off from her job in November 2011 and had not been employed since that time. Id. at 36, 38. Her medical records indicate that she had insurance as late as May 2012. Id. at 326.

On September 14, 2011, Hyman-Self consulted a physician regarding pain in her right knee. Id. at 324. Imaging of her knee revealed "persistent severe medial joint space narrowing out proportion to narrowing of the other joint spaces. There is sclerosis of the bone on either side of that joint. No subchondral cyst formation is seen." Id. The physician stated his "impression" as "moderately advanced osteoarthritis of the medial compartment primarily, but

4

also involving the patellofemoral compartment, probably not significantly changed from the prior study."[2] Id. Hyman-Self's medical records from 2011 do not show that she was prescribed any pain medication for her knee condition, and there is no indication of any other form of treatment. See id. at 272-79.

In 2012, Hyman-Self developed gangrene in the toes of her left foot after a fall, and the fourth and fifth toes on that foot were amputated on April 8, 2012. Id. at 313. Hyman-Self had a history of peripheral vascular disease. Id. at 410. An angiogram of her left leg taken on May 23, 2012 showed critical limb ischemia, which was treated by anticoagulants. Id. at 384-86. Hyman-Self was readmitted to the hospital on September 18, 2012, complaining of pain and numbness in her legs. Id. at 305. "She had an uncomplicated hospital stay" and was discharged in stable condition with a good prognosis for treatment of her neuromyelopathy, which was caused by a vitamin B12 deficiency. Id. She was advised "to use assistance with physical activity due to her instability on her feet." Id. at 304. The only pain medication prescribed for her at that time was aspirin. Id. at 305.

Hyman-Self went to the emergency room on November 11, 2014 complaining of pain in her knees. Id. at 402. One day earlier, she had been struck by a bicyclist and had fallen on her knees, resulting in pain and swelling. Id. Hyman-Self was not using a cane and was able to ambulate without assistance. Id. at 402, 404. She had abrasions on her left knee and tenderness to palpitation in both knees, but had a full range of motion and intact sensation. Id. at 403-04. Imaging of her right knee revealed "mild to moderate joint space narrowing" at the medial compartment with mild osteophytic spurring. Id. at 406. There was no fracture, dislocation or erosive change and no effusion. Id. Her examiner's findings from the imaging were that she had

---

[2] The record does not reflect when the prior study was taken.

5

"mild medial compartmental osteoarthritis" in her right knee. Id. at 407. She was prescribed acetaminophen. Id. at 404.

On December 31, 2014, Hyman-Self went to the emergency room, complaining of shoulder pain resulting from her collision with a bicycle three weeks earlier. Id. at 360. She was noted to have pulses "+3 in all her extremities." Id. at 359. She was not using a cane or other assistive device. Id. Her "Fall Prone Assessment" was listed as "No risk identified." Id. The treatments prescribed for her were shoulder exercises and ibuprofen. Id. at 361, 363.

### 2. Dr. Yang's Consultative Medical Report

At the ALJ's request, Dr. Yang conducted a consultative examination of Hyman-Self on June 17, 2015. Id. at 512-23. At that time, Hyman-Self complained of bilateral leg pain, which she stated had been present since 2012. Id. at 512. She reported using a cane periodically "as needed." Id. Dr. Yang's clinical examination revealed that Hyman-Self "appeared to be in no acute distress." Id. at 513. She exhibited a waddling gait. Id. She could not walk on her toes, but could walk on her heels. Id. She declined to squat. Id. Her stance was normal and she used no assistive devices, such as a cane. Id. She needed no help changing for the examination or getting on and off the exam table. Id. She was able to rise from a chair without difficulty. Id. She had no scoliosis, kyphosis, or abnormality in her thoracic spine, and seated leg raises were negative in both legs. Id. She had no limitation in the range of motion of her legs. Id. at 513, 522-23. Her joints were stable and nontender and no trigger points were evident. Id. Her deep tendon reflexes were physiologic and equal in her upper and lower extremities. Id. at 514. Dr. Yang noted no sensory deficit and that her strength in her lower extremities was 5/5. Id. He found no cyanosis, clubbing or edema in her extremities and no significant varicosities or trophic changes. Id. There was no sign of muscle atrophy. Id. Dr. Yang's diagnosis was that Hyman-

Self had a "[h]istory of bilateral leg pain, secondary to degenerative change." Id. He rated her prognosis as good. Id.

Along with his report regarding his clinical examination of Hyman-Self, Dr. Yang completed a Medical Source Statement regarding her physical limitations. Id. at 516-21. He opined that she could lift and carry up to 10 pounds continuously but could never lift or carry more than 10 pounds. Id. at 516. His only explanation of the basis for those conclusions was the words "too heavy." Id. He determined that she could sit for up to 30 minutes at one time, could stand for up to 10 minutes, and could walk for up to six minutes or for one-half block. Id. at 517. In an eight-hour day, she could sit for a total of eight hours, stand for six hours and walk for five hours. Id. He stated that a cane was medically necessary for her but only "as needed," although she had not brought a cane to the examination. Id. Dr. Yang provided no explanation for his opinions regarding these limitations. He further opined that Hyman-Self could continuously reach, handle, finger, feel, or push and pull with either hand. Id. at 518. She could operate foot controls continuously with either foot. Id. She could frequently climb stairs and ramps, never climb ladders or scaffolds, frequently balance or stoop and occasionally kneel, crouch or crawl. Id. at 519. Dr. Yang determined that Hyman-Self could perform activities like shopping, traveling without a companion, and ambulating without using a wheelchair, walker or two canes or two crutches, taking public transportation, preparing a simple meal and feeding herself, caring for her personal hygiene, and sorting, handling or using paper/files. Id. at 521. She could not walk a block at a reasonable pace on a rough or uneven surface or climb a few steps at a reasonable pace with the use of a single hand rail. Id. Dr. Yang again provided no explanation of the basis for his opinions. Id.

7

### 3. The ALJ Did Not Err in Failing to Adopt the Limitations Stated in Dr. Yang's Medical Source Statement

Gladden asserts that, because Dr. Yang's Medical Source Statement was the only medical opinion in the record regarding Hyman-Self's physical limitations, the ALJ's decision not to incorporate all of Dr. Yang's opinions regarding Hyman-Self's limitations into her RFC "was based on her own lay interpretation of the raw medical data." Pl.'s Br. at 8 (emphasis omitted). He argues that "a rejection of a medical expert's opinion as [in]consistent with their own findings is simply an impermissible substitution of the ALJ's lay opinion for that of the expert." Id. at 10. These contentions are meritless.

The determination of a claimant's RFC is not a medical assessment, but rather an administrative finding that is reserved to the ALJ. An ALJ is required to conduct an independent analysis of the relevant evidence and to reach his or her own determination regarding the claimant's RFC. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); 20 C.F.R. § 416.945. As the United States Court of Appeals for the Third Circuit has articulated:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."

Chandler, 667 F.3d at 361 (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Thus, the ALJ's role is not merely to choose between the opinions of various medical sources. "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); see also Chandler, 667 F.3d at 362 (ALJ could extrapolate based on the evidence of record because every fact incorporated in an RFC does not need to have been found by a medical expert); Mays v.

8

Barnhart, 78 F. App'x 808, 813 (3d Cir. 2003) (ALJ properly determined that claimant could perform light work based on claimant's treatment records even though the only medical opinion in the case was to the contrary).[3]

Gladden's contention that the ALJ's treatment of Dr. Yang's opinion involved her "lay interpretation of the raw medical data," Pl.'s Br. at 8, is simply inaccurate. The ALJ did not interpret raw imaging of Hyman-Self's knee, but instead took into account the medical evaluation of that data contained in Hyman-Self's medical records of the treating physicians who

---

[3] Despite this body of case law in the Third Circuit, there is disagreement among district court judges in the Circuit regarding the extent to which an ALJ must base an RFC assessment on a medical opinion from a physician, with some courts relying on Doak, 790 F.2d 26, in holding that an ALJ must base his or her RFC determination on an opinion from a medical source. Compare Cummings v. Colvin, 129 F. Supp. 3d 209, 214-17 (W.D. Pa. 2015) (holding that Doak does not require an ALJ to base his or her RFC assessment on an opinion from a medical source), with Kester v. Colvin, No. 3:13-CV-02331, 2015 WL 1932157, at *2-3 (M.D. Pa. Apr. 21, 2015) (finding that "the ALJ should have based her RFC decision on at least one physician's opinion"). In Doak, the Third Circuit found that where none of the evidence in the record (consisting of the plaintiff's testimony, three medical reports, and the VE's testimony) suggested that the plaintiff could perform light work, the ALJ's conclusion that he could perform light work was not supported by substantial evidence. 790 F.2d at 28-29. As discussed above, however, more recent cases from the Third Circuit have made clear that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington, 174 F. App'x at 11; see also Chandler, 667 F.3d at 362 (An "ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."). In light of this more recent case law, other courts in this Circuit have determined that the ALJ is not prohibited from making an RFC assessment even if no doctor has specifically made the same findings and even if the only medical opinion in the record is to the contrary. See, e.g., Cummings, 129 F. Supp. 3d at 215; see also, e.g., Butler v. Colvin, No. 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (citing Cummings with approval); Doty v. Colvin, No. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014) (rejecting a reading of Doak that would "prohibit the ALJ from making an RFC assessment even if no doctor has specifically made the same findings and even if the only medical opinion in the record is to the contrary"). These cases have found that Doak merely acknowledged the well-established rule that the RFC assessment is a factual finding that must be made by the ALJ after reviewing all of the evidence in the record. Callahan v. Colvin, No. 13-1634, 2014 WL 7408700, at *1 n.1 (W.D. Pa. Dec. 30, 2014). Here, as discussed infra, the fact that Hyman-Self's recent medical imaging only revealed mild osteoarthritis and that Dr. Yang's clinical examination produced only relatively benign findings provided substantial evidence to support his determination that she was capable of performing a limited range of light work.

9

performed the studies and based their treatment on them. See R. at 40, 324, 406-07. Similarly, the ALJ evaluated Dr. Yang's objective medical findings set forth in his clinical evaluation. See id. at 42. Gladden's claim that it is "impermissible" for an ALJ to give only limited weight to a medical opinion that is inconsistent with the claimant's treatment records, including the results of the physician's own examination of the claimant, is incorrect. Social Security regulations specify that the factors an ALJ should consider in deciding how much weight to give to a medical opinion include the extent to which it is supported by the medical evidence and its consistency with the record as a whole. 20 C.F.R. § 1527(c)(3), (c)(4). It is firmly-established law that when a medical opinion is not supported by the claimant's medical records, an ALJ is not required to give it significant weight. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."); Newhouse, 753 F.2d at 286 (same). In addition, when a physician's opinion is not supported by the records of his own examination of the claimant, an ALJ may properly afford that opinion "little or no weight." Smith v. Astrue, 961 F. Supp. 2d 620, 643 (D. Del. 2013) (citing Dula v. Barnhart, 129 F. App'x 715, 719 (3d Cir. 2005)); accord Salerno v. Comm'r of Soc. Sec., 152 F. App'x 208, 209-10 (3d Cir. 2005); Humphreys v. Barnhart, 127 F. App'x 73, 76 (3d Cir. 2005); Shelton v. Astrue, No. 11-75J, 2012 WL 3715561, at *3 (W.D. Pa. Aug. 28, 2012); Petrowsky v. Astrue, No. 10-563, 2011 WL 6083117, at *14-15 (D. Del. Dec. 6, 2011).

The ALJ's determination here that Dr. Yang's opinion regarding Hyman-Self's functional limitations was inconsistent with the objective medical evidence was amply supported by the record. As the ALJ noted, the 2011 imaging of Hyman-Self's right knee showed only moderately advanced osteoarthritis of the right knee. R. at 40 (citing id. at 324). There is no

10

indication that she was prescribed prescription pain medication or any other form of treatment for that condition. See id. at 272-79. The 2014 diagnostic imaging of Hyman-Self's knee—taken approximately six months before the hearing—revealed only mild osteoarthritis. Although the image was taken when her knee was swollen after a fall, the only treatment prescribed for her was acetaminophen. Id. 402-04. Moreover, she reported that Aleve was effective in relieving her pain. Id. at 224. As the ALJ also pointed out, Dr. Yang's own examination notes showed relatively benign findings, including that: she did not need help to change clothing, get on and off the examination table or rise from a chair; she had negative sitting leg raise tests; her joints were stable and nontender; she had no trigger points; she had normal deep tendon reflexes, no sensory deficit and 5/5 strength in her legs; she had no sign of muscle atrophy, no significant varicosities or trophic changes and her prognosis was good. Id. at 513-14. What is noticeably missing from Dr. Yang's examination notes is any medical evidence to show that Hyman-Self suffered from a condition that produced the type of extreme functional limitations he included in his Medical Source Statement.

The ALJ also justified her decision to afford Dr. Yang's opinion only partial weight by noting that he provided no explanation of the basis for the functional limitations he would have imposed. Id. at 42. It is well settled that where a physician fails to provide an explanation supporting his or her opinion, that "by itself would justify the ALJ's decision to accord [it] little weight." Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 119 (3d Cir. 2012); see also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (opinion may be given "more or less weight depending upon the extent to which supporting explanations are provided"). This is especially the case when, as here, the opinion is provided in a checklist form "which require[s] only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for

11

the conclusions stated." Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)). Such forms provide "'weak evidence at best' in the context of a disability analysis." Id.; see also Wise v. Comm'r of Soc. Sec., 626 F. App'x 357, 360 (3d Cir. 2015) ("[W]e have said that ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions.").

Gladden argues, however, that if the ALJ believed that Dr. Yang's opinion lacked a sufficient explanation of the basis for the functional limitations he would have imposed, the ALJ was required to recontact Dr. Yang to obtain such an explanation. Pl.'s Br. at 9. He purports to find such a "mandatory" requirement in 20 C.F.R. § 404.1519p(b). Id. Gladden's argument conflates a situation in which the record as a whole contains insufficient information on which to determine whether the claimant is disabled, with the circumstance here, where a medical source's report fails to provide a sufficient explanation to justify his opinion regarding the claimant's functional limitations. The regulation that Gladden cites directs ALJ's to consider "whether the [consultative examiner's] report provides evidence which provides an adequate basis for decisionmaking." 20 C.F.R. § 404.1519p(a)(1). It is only if the ALJ finds that the report is "inadequate or incomplete" for that purpose that he or she is directed to contact the consultative examiner, "give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information." Id. § 404.1519p(b). "Contrary to Plaintiff's argument, the ALJ is only required by the applicable regulations to further develop the record when the 'evidence [the Commissioner] receive[s] from[the claimant's] . . . medical source is *inadequate* for [the ALJ] to determine whether [the claimant is] disabled." Simmons v.

12

Barnhart, No. 02-1539-KAJ, 2004 WL 2323776, at *6 (D. Del. Oct. 12, 2004) (alteration in original) (quoting 20 C.F.R. § 404.1512(e)(1)), aff'd, 148 F. App'x 134 (3d Cir. 2005). "'[T]he ALJ only need re-contact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled,' not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." Kelly v. Colvin, No. CV 09-759-RGA-SRF, 2013 WL 5273814, at *16 (D. Del. Sept. 18, 2013) (quoting Ellow v. Astrue, No. 11-7158, 2013 WL 159919, at *8 (E.D. Pa. Jan. 15, 2013)); see also Welsh v. Colvin, No. 13-736, 2014 WL 2214221, at *2 (W.D. Pa. May 28, 2014) (Where an ALJ determined that a doctor's opinion was inconsistent with his clinical findings, "[t]his is an assessment the ALJ is required to make. It does not mean that the evidence was inadequate" or that the ALJ was required to recontact the doctor.). There is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled. Boulware v. Colvin, No. 13-CV-106-SLR-SRF, 2015 WL 1133455, at *3-7 (D. Del. Mar. 10, 2015), report and recommendation adopted, No. 13-106-SLR/SRF, 2015 WL 1467302 (D. Del. Mar. 30, 2015).

Here, the diagnostic imaging reports reflecting that Hyman-Self's osteoarthritis was mild or, at most, moderate along with Dr. Yang's clinical examination that did not reveal any more significant condition or functional limitations provided a sufficient basis on which the ALJ could conclude that she was capable of performing light work. It is the claimant's burden to present evidence to establish that he or she is unable to engage in any substantial gainful activity. Santiago v. Comm'r of Soc. Sec., 273 F. App'x 211, 213 n.1 (3d Cir. 2008) (citing 42 U.S.C. § 1382c(3)(A)). The claimant is required to "prove [his or] her medical condition and [the resulting] functional limitations." Esposito v. Apfel, No. 99-771, 2000 WL 218119, at *4 (E.D.

Pa. Feb. 24, 2000) (citing Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995)); accord Torres v. Schweiker, 682 F.2d 109, 111 (3d Cir. 1982); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden of proof at steps one through four of the sequential analysis). Here, Gladden has failed to meet his burden to provide evidence to show that Hyman-Self was subject to any further limitations than the ALJ included in her RFC. The absence of such evidence in the record "does not indicate a need for additional evidence. This instead indicates there is no other evidence of a disability." Rissmiller v. Colvin, No. 15-5731, 2016 WL 6107209, at *6 (E.D. Pa. Oct. 18, 2016). The ALJ was permitted to consider both what the record did say as well as what it did not say. Lane v. Comm'r of Soc. Sec., 100 F. App'x 90, 95 (3d Cir. 2004) (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (3d Cir. 1983)). The ALJ's determination that the record was sufficient to establish that Hyman-Self was not disabled without the need for further explanation from Dr. Yang was supported by substantial evidence.

### B. The ALJ's Determination That Hyman-Self's Testimony Regarding the Extent of Her Limitations Was only Partially Credible Was Supported by Substantial Evidence

Gladden argues that the ALJ's credibility determination was erroneous because she improperly considered the fact that Hyman-Self did not receive consistent medical treatment and had received only conservative and routine treatment. Pl.'s Br. at 14-15. The ALJ made clear, however, that the primary reason for her credibility finding was that the extensive and pervasive symptoms Hyman-Self described, see R. at 38-39, were not supported by the objective medical findings. Id. at 41; see also id. at 43 ("Because her subjective complaints are out of proportion to medical findings, I consider the claimant's testimony with caution."). For example, Hyman-Self claimed that her condition limited her ability to lift, squat, bend, reach, walk, sit, kneel and climb stairs. Id. at 38, 220. She asserted that she experienced sharp pain in her legs and feet when bending, standing or walking and that her pain was constant. Id. at 223. She testified that she

14

was unable to go out alone because she feared that she might fall.  <u>Id.</u> at 218.  She stated that, when standing, she "constantly ha[d] a feeling of falling" and that, when sitting, her legs became "totally numb."  <u>Id.</u> at 61.  She testified that she could lift only about six pounds, <u>id.</u> at 66, could stand for only 10-15 minutes, <u>id.</u> at 64, could walk only one-half block before needing to stop, <u>id.</u>, and could sit for, at most, 20-25 minutes but that she needed to elevate her legs when sitting or they would swell, <u>id.</u> at 66.

In contrast, Hyman-Self's 2014 knee imaging revealed only mild osteoarthritis.  <u>Id.</u> at 407.  Dr. Yang's clinical examination demonstrated that she had full strength and a full range of motion in her legs.  <u>Id.</u> at 513-14.  Her legs showed no varicosities, trophic changes or muscle atrophy and no trigger points.  <u>Id.</u>  Although she claimed that she tried to use a cane all of the time, <u>id.</u> at 63-64, she did not have it with her when she visited the hospital in 2014, <u>id.</u> at 404, or when she was examined by Dr. Yang in 2015, <u>id.</u> at 513, and, in each case, she was able to ambulate without assistance.  Dr. Yang reported that she had needed no assistance in changing clothes or in getting onto or rising from the examination table or a chair.  <u>Id.</u>

A claimant's testimony regarding pain and other symptoms cannot establish that the claimant is disabled unless there is "objective medical evidence from an acceptable medical source that shows the [claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled."  20 C.F.R. § 404.1529.  "[I]t is within the discretion of the Secretary to evaluate the credibility of the claimant's complaints and arrive at an independent judgement in light of the medical findings

15

and other evidence regarding the true extent of the claimant's pain." Riggsbee v. Shalala, No. 93-5768, 1995 WL 847944, at *8 (D.N.J. June 29, 1995), aff'd sub nom. Riggsbee v. Chater, 82 F.3d 406 (3d Cir. 1996); accord Joyce v. Shalala, No. 94-1901(JCL), 1997 WL 998582, at *7 (D.N.J. Oct. 17, 1997) (citing Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)). When the objective medical evidence does not support the extent of the symptoms the claimant alleges, it is appropriate for the ALJ to find those allegations not credible. See, e.g., Jones v. Colvin, No. 13-4831, 2014 WL 2862245, at *9 (E.D. Pa. June 24, 2014) (ALJ properly found claimant's subjective complaints not credible when "[p]hysical examinations typically revealed full or almost-full motor strength, normal reflexes, normal sensation, and a normal or almost-normal gait"); Clemente v. Astrue, No. 10-159, 2011 WL 2731816, at *8 (W.D. Pa. July 13, 2011) (ALJ properly found claims regarding degree of symptoms not credible where they were not supported by results of physician's clinical examination); Tacza v. Astrue, No. 08-732, 2009 WL 1835002, at *3 (W.D. Pa. June 25, 2009) (ALJ properly discounted claimant's asserted symptoms because medical imaging revealed only mild to moderate degenerative changes and physical examination revealed "little to no . . . diminished strength, decreased range of motion, evidence of radiculopathy or altered gait and her course of treatment was largely over-the-counter pain medications, anti-inflammatories, moist heat, [recommended] weight reduction, and physical therapy" (internal quotation marks omitted)); Druckenmiller v. Sullivan, No. 88-6300, 1990 WL 87383, at *4 (E.D. Pa. June 18, 1990) (claimant's allegations were not credible when x-rays of her back showed no remarkable degenerative arthritis). Here, the ALJ's determination that Hyman-Self's claimed degree of symptoms was only "partially credible," R. at 41, was amply supported by the relatively benign findings of her imaging and clinical examinations, as well as

the lack of any other evidence of a more severe knee condition. Those medical records alone provided substantial evidence to support the ALJ's credibility determination.

Gladden argues, nevertheless, that the credibility determination was improper because the ALJ relied on Hyman-Self's failure to obtain regular medical treatment, which was explained by her lack of medical insurance. Pl.'s Br. at 14-15. It is true that the ALJ referenced the extent of Hyman-Self's treatment and her failure to attempt to obtain medical insurance or seek low-cost treatment services in her community. R. at 41. The gist of the ALJ's point, however, was that the treatment Hyman-Self received was not consistent with the extent of symptoms she claimed to experience. Id. The ALJ noted that Hyman-Self had received only conservative treatment on those occasions when she sought treatment, that she treated her symptoms only with nonprescription pain medicine and that she stated in her Supplemental Function Questionnaire that that medicine relieved her pain. Id. These observations are supported by the record. Even when Hyman-Self did seek treatment for her knee pain, her doctors did not prescribe any other treatment than over-the-counter pain medication. See id. at 305, 361, 363. The extent of treatment prescribed is a factor that the applicable regulations instruct ALJ's to consider in evaluating claimants' subjective testimony regarding the extent of their symptoms. 20 C.F.R. § 404.1529; Proper v. Astrue, No. 10-238 ERIE, 2011 WL 5360296, at *10 (W.D. Pa. Nov. 7, 2011). Moreover, the ALJ's analysis that Hyman-Smith's claims of constant sharp pain were called into question by her failure to seek low cost insurance, for example, from Medicaid,[4] or to seek out low-cost treatment is not unreasonable and it does not alter the fact that other, more than sufficient evidence supported the ALJ's credibility evaluation.

---

[4] The record reflects that Hyman-Self had no income in 2013 and 2014. R. at 183.

## VI. CONCLUSION

For the foregoing reasons, Gladden's Request for Review is denied. An appropriate order follows.

Dated: February 28, 2018

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE